**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **BOBBI A. RITCHIE,** ) | **CASE NO. 1:14CV1517** |
| ) | |
| **Plaintiff,** ) | **JUDGE JAMES S. GWIN** |
| ) | |
| v. ) | **Magistrate Judge George J. Limbert** |
| ) | |
| **CAROLYN W. COLVIN[1],** ) | **REPORT AND RECOMMENDATION** |
| **ACTING COMMISSIONER OF** ) | **OF MAGISTRATE JUDGE** |
| **SOCIAL SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

Bobbi A. Ritchie ("Plaintiff"), seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court REVERSE the ALJ's decision and remand the instant case:

**I.     PROCEDURAL AND FACTUAL HISTORY**

Plaintiff applied for DIB and SSI in June of 2011, alleging disability beginning April 19, 2010 due to fibromyalgia, small fiber neuropathy, syncope, chronic fatigue, and hyper mobility disorder. ECF Dkt. #11 ("Tr.") at 284. The SSA denied Plaintiff's applications initially and on reconsideration. *Id.* at 124-131. Plaintiff requested an administrative hearing and on November 9, 2012, the Administrative Law Judge ("ALJ") conducted an administrative hearing and accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 40-83, 138. On December 20, 2012, the ALJ issued a Decision finding that Plaintiff was not disabled under the Social Security Act and therefore was not entitled to DIB or SSI. *Id.* at 19-29.

Plaintiff requested that the Appeals Council review the unfavorable portion of the ALJ's Decision, and on January 23, 2014, the Appeals Council denied review. Tr. at 1-10.

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

On July 10, 2014, Plaintiff filed the instant suit seeking review of the ALJ's Decision. ECF Dkt. #1. On November 21, 2014, Plaintiff filed a brief on the merits. ECF Dkt. #15. On February 11, 2014, Defendant filed a brief on the merits, and on February 25, 2015, Plaintiff filed a reply brief. ECF Dkt. #s 18, 19.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffers from small fiber neuropathy, inappropriate sinus tachycardia, tobacco abuse, obesity, and chronic synovitis in her left knee, which constituted severe impairments under 20 C.F.R. §404.1520(c) and 20 C.F.R. §416.920(c). Tr. at 21. The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 419.920(d), 416.925, 416.926 ("Listings"). *Id*. at 22-23.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) as she could lift or carry up to twenty pounds occasionally and up to ten pounds frequently and she could sit, stand/walk up to six hours per eight-hour workday. Tr. at 23. However, the ALJ found that Plaintiff could only occasionally crawl, crouch, kneel, stoop, balance, climb ropes and scaffolds, and she could never climb, ropes or scaffolds[2], and she was limited to frequent use of the dominant hand for fine motor skills, grasping and turning, and she could have no exposure to hazards such as unprotected heights and moving machinery. *Id*.

The ALJ further found that based upon her RFC for Plaintiff and the testimony of the VE, Plaintiff was able to return to past relevant work as a pharmacy technician. Tr. at 28-29. As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to DIB or SSI.

---

[2] The undersigned points out that the ALJ's decision stated both that Plaintiff could climb scaffolds occasionally and she could never climb scaffolds. Tr. at 23. However, neither party has raised this error.

**III.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.     STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to

-3-

support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V.     LAW AND ANALYSIS

### A.     Treating Physician Rule

Plaintiff first asserts that the ALJ did not properly apply the treating physician rule to the opinions of her treating cardiologist, Dr. Joyce.  ECF Dkt. #15 at 13-17.  For the following reasons, the undersigned recommends that the Court find merit to Plaintiff's assertion.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544.   A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers, supra*, at 243 (6th Cir. 2007.  If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

If an ALJ decides to discount or reject a treating physician's opinion, she must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

-4-

medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why she rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Commissioner of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. Apr.28, 2010). For example, where an ALJ failed to describe "the objective findings that were at issue or their inconsistency with the treating physician opinions," remand has been ordered. *Barrett v. Astrue*, 2011 WL 6009645, at *6 (E.D.Ky. Dec.1, 2011).  The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. March 15, 2011) (quoting *Rogers*, 486 F.3d at 243 ).  An ALJ need not discuss every piece of evidence in the administrative record so long as she considers all of a claimant's medically determinable impairments and her opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir.2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir.2010) (quotation omitted).

On the other hand, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' " *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013. The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. *Id.* citing 20 C.F.R. §404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* citing §404.1527(c)(6).

Moreover, a medical source's statement on an issue reserved for the Commissioner, such as an assertion that a claimant is "disabled" or "unable to work," is a legal conclusion and not a medical opinion. 20 C.F.R. § 416.927(e). Such statements are not entitled to any special significance. 20 C.F.R. § 416.927(e)(3). "The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.2004). The "[r]esponsibility for deciding residual functional capacity rests with the ALJ," not a physician. *Vlach v. Comm'r of Soc. Sec.*, No. 12-2452, 2013 WL 3766585, at *12 (N.D. Ohio July 16, 2013) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)); accord 20 C.F.R. § 416.946(c) (the ALJ "is responsible for assessing your residual functional capacity"); *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide."). To determine an individual's RFC, the Commissioner will review "all of the relevant medical and other evidence" in the record, which may include, but is not limited to, medical source opinions. 20 C.F.R. § 416.945(a)(3).

In the instant case, Dr. Joyce completed a medical source statement on December 5, 2012 indicating that he first examined Plaintiff on June 17, 2011 and last examined her on August 3, 2012. Tr. at 1070. He opined that Plaintiff could stand/walk up to fifteen minutes at one time and could stand/walk up to sixty minutes per eight-hour workday. *Id*. at 1069. He further opined that Plaintiff could sit up to four hours at one time and up to eight hours per eight-hour workday. *Id*. As to the reasons for his limitations, he wrote that Plaintiff has inappropriate sinus tachycardia and mild

-6-

autonomic dysfunction.  *Id.*  He also noted that if Plaintiff stands for a prolonged period of time, she experiences syncope.  *Id.*

Dr. Joyce further indicated that Plaintiff could lift and carry from 0 to 5 pounds occasionally and frequently. Tr. at 1069.  He identified Plaintiff's near syncope episodes as the reason for the limitation, indicating that Plaintiff could be injured if she fell while carrying something.  *Id.* Dr. Joyce also opined that Plaintiff could never stoop because if she stands too fast, she could pass out. *Id.*  He indicated that Plaintiff needed to elevate her legs for one hour during an eight-hour workday due to chronic edema and she would frequently experience symptoms such as daily lightheadedness severe enough to interfere with the attention and concentration needed to perform even simple tasks. *Id.*  Dr. Joyce could not estimate how many days per month Plaintiff would be absent from work due to her impairments or treatment, but he noted that Plaintiff's dizziness would limit her attendance. *Id*. at 1070.  He further indicated that Plaintiff experienced near syncope five times per week and no syncope on her current medications.  *Id.*  He opined that Plaintiff would need more supervision at work than an unimpaired worker, but she could operate a motor vehicle and take a bus alone.  *Id*. He also opined that Plaintiff should avoid high temperature environments, prolonged standing, rapid changes in her posture, and dehydration.  *Id.*

The ALJ acknowledged that Dr. Joyce was a treating physician.  However, she failed to explain why she attributed less than controlling weight to his opinion. Tr. at 28.  She did not address either of the two prongs for determining whether to attribute controlling weight to his opinion.  She did not  indicate whether Dr. Joyce's opinion was well-supported by objective findings and she failed to explain how or why it was not.  Or if she found that Dr. Joyce's opinion was well-supported by objective findings, she failed to explain whether it was inconsistent with other credible evidence and she failed to identify the evidence that was inconsistent.  Rather, the ALJ merely recited Dr. Joyce's opinion and then indicated that she attributed little weight to it because "he admitted that the claimant's syncopal episodes significantly reduced with medication."  *Id*.  In this section of her decision, the ALJ did not cite to the evidence of record supporting this statement.

In an earlier part of her decision, the ALJ does cite to treatment notes that she indicates supports this statement.  She cites to Exhibit 2F at pages 26-28 in stating that "[d]espite the

-7-

claimant's diagnosis of syncope, which used to occur on a daily basis, Dr. Joyce noted she has responded extremely well to a low dose of medication." Tr. at 24. However, this citation reference is a treatment note of Plaintiff's follow up visit with Dr. Polston for her neuropathy. *Id.* at 553. No mention is made of syncope or Dr. Joyce.

The first treatment note in which Dr. Joyce stated that Plaintiff's syncope "responded extremely well to a low dose of medication" was on February 3, 2012. Tr. at 864. He did also note on September 28, 2011 that Plaintiff's syncopal episodes had reduced to two times per month and she was "much improved" on the current medications. *Id.* at 897. The earliest notation establishing an improvement in the frequency of Plaintiff's syncope was on August 12, 2011 where Dr. Joyce noted that Plaintiff was "responding nicely" to the medications. *Id.* at 917. Thus, even accepting that the ALJ meant to cite to the first date in which improvement was noted, it was still over an entire year from her alleged date of disability, which was April 19, 2010.

Further, even accepting that the medications did reduce Plaintiff's syncopal episodes, the ALJ does not address the near syncopal episodes that Plaintiff continued to have for which Dr. Joyce limited her ability to lift and carry objects and about which he noted that Plaintiff experienced five times per week. *Id.* at 1069. Dr. Joyce also indicated that Plaintiff's daily episodes of light headedness would be severe enough to frequently interfere with her attention and concentration to perform even simple work tasks, meaning from 34-66% of the workday. *Id.* Nor did the ALJ address or explain her rejection of Dr. Joyce's opinion that Plaintiff could never stoop because if she stands up too fast, she passes out, for which he limited her ability to stand/walk to fifteen minutes at a time and only up to sixty minutes per eight-hour workday. *Id.* The ALJ also failed to address or explain her rejection of Dr. Joyce's additional limitations of avoiding high temperature environments, avoiding dehydration and avoiding rapid changes in posture for Plaintiff. *Id.* at 23; *Id.* at 1070. The ALJ did not address any of these limitations or explain why she did not adopt them when they were made by Plaintiff's treating cardiologist, who last examined her August 3, 2012 and nevertheless opined such limitations despite noting the marked improvement in her syncope with the medications.

For these reasons, the undersigned recommends that the Court find that the ALJ violated the treating physician rule.  The undersigned recognizes that there are instances where an ALJ's failure to comport with the treating source doctrine may be deemed harmless. A violation of the rule might constitute "harmless error" where (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "the Commissioner has met the goal of §1527(d)(2) – the provision of the procedural safeguard of reasons – even though she has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547. None of these exceptions apply here.  Defendant does not assert that Dr. Joyce's opinion is patently deficient, it is clear that the ALJ did not adopt Dr. Joyce's opinion, and the ALJ's findings were not consistent with that opinion.  In addition, the "ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where [the court] cannot engage in 'meaningful review' of the ALJ's decision."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir.2009) (quoting *Wilson*, 378 F.3d at 544).  That is the case here.

Accordingly, the undersigned recommends that the Court remand the instant case for proper application, evaluation and articulation of the treating physician rule to Dr. Joyce's assessment as to the nature and severity of Plaintiff's impairments.

### B. Agency-Reviewing Physician Opinion

Plaintiff next asserts that the ALJ failed to sufficiently explain her rejection of the opinion of Dr. Thomas, the agency-reviewing physician, who opined that Plaintiff was limited to sedentary work and to work with no exposure to hazards. ECF Dkt. #15 at 17-19.  Plaintiff also contends that the limitations were not included in the hypothetical individuals that the ALJ presented to the VE and they were not in her RFC finding for Plaintiff.  *Id.* at 17.

The undersigned notes that the ALJ did indeed include both a sedentary exertional level and the avoidance of exposure to hazards in her hypothetical individuals that she presented to the VE.  In her first hypothetical, the ALJ presented a person with Plaintiff's age, education, and work background that could engage in medium exertional level jobs and, among other limitations, had to "avoid concentrated exposure to hazards such as unprotected heights and moving machinery." Tr.

-9-

at 76. In her third hypothetical individual presented to the VE, the ALJ changed the exertional level to sedentary and kept the rest of the prior limitations the same, which would include the avoidance of exposure to hazards. *Id*. at 77. Thus, both of these limitations were presented by the ALJ to the VE at the hearing. In addition, the ALJ's decision did include in the RFC for Plaintiff the avoidance of exposure to hazards such as unprotected heights and moving machinery. *Id*. at 23.

However, Plaintiff is correct that the ALJ did not include in her decision a limitation to sedentary work. Tr. at 23. When she addressed the opinion of the state agency reviewing physician, the ALJ explained that she attributed "some weight" to the opinion, but she found "that the claimant is able to perform at a more strenuous exertional level." *Id.* at 28. Plaintiff complains that this explanation is insufficient, especially in light of the later opinion of her treating cardiologist Dr. Joyce. ECF Dkt. #15 at17-18.

The undersigned recommends that the Court find merit to Plaintiff's second assertion of error. While the ALJ did include the avoidance of hazards to both the VE and in her decision, she failed to adequately explain why she attributed only some weight to Dr. Thomas' opinion and rejected that part of her opinion that Plaintiff could only lift up to ten pounds frequently and occasionally and could only stand/walk up to two hours per eight-hour workday due to her syncope. Tr. at 28, 89. 20 C.F.R. §§ 404.1527(e)(2)(ii) and 416.927(e)(2)(ii) provide that:

> When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, the administrative law judge will evaluate the findings using the relevant factors in paragraphs (a) through (d) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

Paragraphs a through d of the regulations discuss the general requirements of evaluating opinion evidence and paragraph c in particular identifies factors for the ALJ to consider in determining the weight to give to any medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors include the medical source's examining relationship (or lack thereof), the medical source's specialization,

-10-

the support provided by the medical source for his or her opinion, and the consistency of the medical source's opinion with the record as a whole. *Gayheart*, 710 F.3d at 376, citing 20 C.F.R. §404.1527(a)-(e). Other factors "which tend to support or contradict the opinion" may also be considered in assessing any type of medical opinion. *Id.,* citing §404.1527(c)(6).

Due to the ALJ's failure to adequately explain why she did not adopt the limitations set forth in Dr. Thomas' opinion, the undersigned recommends that the Court find that remand is necessary in order for the ALJ to more thoroughly address the opinion and findings, including the reasons why she does or does not include her limitations for Plaintiff. 20 C.F.R. §§ 404.1527, 416.927. While the undersigned acknowledges that the RFC is ultimately a determination for the ALJ, she must still "consider and address medical source opinions. If the RFC assessment conflicts with a opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p.

### C. OBESITY

Plaintiff also asserts that the ALJ erred when she failed to properly analyze her obesity in accordance with Social Security Ruling ("SSR") 02-1p. ECF Dkt. #15 at 13-16. For the following reasons, the undersigned recommends that the Court find no merit to this assertion.

The social security regulations require that ALJs consider the effects of obesity as part of their adjudication of a claim for benefits at Steps Two through Five of the sequential evaluation process. *See* SSR 02-1p; *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir.2011). SSR 02–lp recognizes that obesity may affect an individual's ability to perform the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, as well as an individual's ability to perform postural functions such as climbing, balancing, stooping, and crouching. SSR 02–1p, 2000 WL 628049, at *6. However, SSR 02–lp does not mandate a particular mode of analysis and does not establish whether obesity is a severe impairment or whether it correlates with any degree of functional loss. *Id.; Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir.2006). Rather, the Ruling simply recognizes that "obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 418 (quoting SSR 02-1p).

-11-

Here, the undersigned points out that Plaintiff did not list obesity as an impairment in her disability applications or contacts with the agency, and she did not mention any limitations based upon her weight. Tr. at 63-64, 283-284, 292, 307, 314, 324; *see also Cranfield v. Comm'r of Soc. Sec.*, 79 Fed. App'x 852, 857 (6th Cir.2003) (ALJ did not commit error in not addressing claimant's obesity in his decision when claimant failed to indicate that obesity was a significant impairment and neither claimant not doctors "offered any evidence to suggest that her weight was a significant impairment."); *see also Stevens v. Comm'r of Soc. Sec.,* 2013 WL 1399178 (N.D. Ohio Apr. 5, 2013)(holding that "[i]t is a mischaracterization of the Rule [SSR 02-1p] to suggest that the ALJ is obligated to consider obesity in every case" and finding that obesity was not medically determinable factor to consider in sequential evaluation because no evidence was presented to show that claimant's obesity increased the severity of her other impairments); *Smith v. Astrue, No.* 3:10CV1829, 2012 WL 1232272, at *4 (N.D. Ohio Apr. 12, 2012), unpublished (ALJ did not err in failing to address obesity in decision where claimant called attention to her height and weight, but failed to present any evidence that obesity impacted her ability to work); *Young v. Comm'r of Soc. Sec.*, No. 3:09CV 1984, 2011 WL 2182869, at *7 (N.D. Ohio June 6, 2011)(ALJ not required to address obesity in decision because although claimant provided evidence of obesity, no diagnosis of obesity existed, claimant failed to allege obesity as impairment, failed to complain of obesity in testimony, and failed to furnish evidence of impact obesity had on ability to work); *Benson v. Astrue*, No. 1: 10CV 1654, 2011 WL 6122944, at *9 (N.D.Ohio Nov.15, 2011), unpublished, Report and Recommendation adopted by 2011 WL 6122942 (N.D.Ohio Dec.9, 2011), unpublished (although record showed claimant's height and weight, ALJ did not err in failing to address obesity in decision because claimant failed to present ALJ with evidence of how weight impacted ability to work).

Further, Plaintiff does not show how her obesity impacts her ability to work more than that assessed by the ALJ. The ALJ in this case found that Plaintiff's obesity was a severe impairment. Tr. at 21. She also reviewed treatment notes indicating Plaintiff's height, weight, and body mass index and the fact that one of her treating physicians advised Plaintiff to exercise three times per week in a weight-bearing, low impact activity. *Id*. at 25. The ALJ limited Plaintiff's exertional level to light work and further restricted her abilities to climb ladders, ropes or scaffolds and her exposure

to hazards. *Id*. at 23. Moreover, none of the physicians who diagnosed her with obesity offered physical limitations, but they recommended that Plaintiff lose weight by increasing her exercise. *Id.* at 630, 633, 817, 831. In addition, Plaintiff testified that when she left her last job, she weighed 275 pounds at the height of 5 feet, 4.5 inches, while at the time of the hearing she weighed 320 pounds. *Id*. at 63. Given Plaintiff's failure to identify obesity as one of her impairments, her failure to present evidence that her obesity increased the severity of her other limitations, her testimony that when she last worked she weighed 275 pounds and was still able to work, and the ALJ's identification of obesity as a severe impairment Step Two, the undersigned recommends that the Court find that the ALJ did not commit reversible error in failing to further address or accommodate Plaintiff's obesity.

### D.     CREDIBILITY

Plaintiff additionally asserts that the ALJ credibility analysis relies heavily on her alleged lack of compliance without applying SSR 82-59 and placed undue weight on her occasional mistakes in reporting her medical history to the agency. ECF Dkt. #15 at 19.

The undersigned recommends that the Court find that the ALJ did not rely "heavily" upon Plaintiff's alleged non-compliance with treatment recommendations as the decision itself only discusses alleged non-compliance in a small part of the decision. Tr. at 26. Moreover, Plaintiff complains that the ALJ placed undue weight on Plaintiff continuing to smoke cigarettes despite recommendations to quit as the ALJ inaccurately reported that Plaintiff smoked 8 packs per day. ECF Dkt. #15 at 19. The ALJ did in fact inaccurately state that Plaintiff smoked 8 packs of cigarettes per day as the ALJ's citation to the medical record upon which she based this finding actually states that Plaintiff smokes *.8* packs of cigarettes per day for the last three years. Tr. at 847. Despite this error, the undersigned's review of the ALJ's decision does not find an overemphasis or heavy reliance by the ALJ on Plaintiff's smoking of cigarettes or her alleged non-compliance with the recommendations of treatment providers. In her credibility analysis, the ALJ provides a lengthy review of the medical evidence regarding each of Plaintiff's severe and non-severe impairments, and she refers to the smoking of 8 packs of cigarettes per day in conjunction with finding that Plaintiff's tobacco abuse is a severe impairment. *Id*. at 25.

-13-

Accordingly, the undersigned recommends that the Court find that Plaintiff's assertions of error concerning the ALJ's credibility analysis are without merit.

### E.  STEP 4 FINDINGS CONCERNING PAST RELEVANT WORK AND RFC

Finally, Plaintiff alleges that the ALJ erred in her Step Four finding that she could return to her past relevant work as a pharmacy technician as actually performed because her RFC for Plaintiff limited her to light work while the pharmacy technician job was referred to as light and medium and the specific vocational preparation time was different than that which the ALJ attributed to Plaintiff in her RFC.  ECF Dkt. #15 at 20.  Plaintiff asserts that the ALJ failed to investigate her past relevant work fully and to make findings about said work as required by SSR 82-62.  *Id.*

The undersigned recommends that the Court decline to address these alleged errors because the ALJ's analysis of the opinions of Drs. Joyce and Thomas upon remand may impact her findings under the disability evaluation.  *Smith v. Comm'r of Soc. Sec.*, No. 1:12CV2062, 2013 WL 3337405 at *10 (N.D. Ohio, July 2, 2013)(declining to address assertion concerning ALJ violation of treating physician rule when Court remanded for effect ME testimony had on ALJ's Step Three determination); *see also Trent v. Astrue*, Case No. 1:09CV2680, 2011 WL 841538 (N.D.Ohio March 8, 2011) (declining to address claimant's remaining assertion of error because remand was already required and ALJ's application of the treating physician rule on remand may impact his findings under the sequential disability evaluation).  The analysis of these opinions may impact the ALJ's RFC for Plaintiff which in turn may impact this Step Four assertion.

### VI.  RECOMMENDATION AND CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court REVERSE the ALJ's decision and REMAND the instant case for further proceedings consistent with the instant Report and Recommendation.  The ALJ shall reevaluate the opinions of Drs. Joyce (treating physician) and Thomas (agency-reviewing physician), indicate the weight assigned to those opinions with

explanation, reevaluate and address Plaintiff's RFC if necessary based upon those reevaluations and redetermine the other impacted steps in the sequential analysis.

DATE: June 29, 2015

                         */s/George J. Limbert*
                         GEORGE J. LIMBERT
                         UNITED STATES MAGISTRATE JUDGE

      ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).